## Louisville & Nashville Railroad Company v. Mudd's Administratrix.

(Decided January 23, 1917.)

### Appeal from Marion Circuit Court.

1. Carriers—Passenger Under Influence of Liquor.—The mere fact that a passenger is drinking or under the influence of liquor is not enough to put upon trainmen the duty of giving him more care than to other passengers.

2. Carriers—Passenger Under Influence of Liquor.—It is only when the intoxication is such as to render the passenger helpless or incapable of taking care of himself that extra care is demanded from the trainmen, to prevent injury to him, and that, only when their attention is directed, by observation or information, to his helpless condition, or when by the exercise of ordinary care his helpless condition could have been discovered.

3. Carriers—Passenger Under Influence of Liquor.—Trainmen are not obliged to anticipate that a passenger who is under the influence of liquor will get up from his seat and leave the train while it is moving, simply because his station has been announced.

4. Carriers—Passenger Under Influence of Liquor.—The statement that a passenger is drinking considerably, accompanied with a request to see that he get off at his station, is not notice that the passenger is in a helpless condition or incapable of taking care of himself.

5. Carriers—Passengers Under Influence of Liquor.—Evidence of the fact that the passenger was drinking and under the influence of liquor within a reasonably short time before getting on the train and after leaving it, is competent upon the inquiry, but not sufficient to prove that the passenger was, while on the train, in a helpless condition or incapable of taking care of himself.

W. C. McCHORD, P. K. McELROY and B. D. WARFIELD for appellant.

S. A. RUSSELL and H. S. McELROY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an appeal from a judgment of the Marion Circuit Court granting the administratrix of Lloyd D. Mudd seven thousand dollars damages for his death, which occurred May 11th, 1915, as the result of injuries received by him on October 6th, 1914, from falling or stepping off of one of appellant's passenger trains, as it approached Loretto Station.  The decedent was a passenger on said train, going from Louisville to Loretto, Kentucky.  The train was due to leave Louisville at 5:15 p. m. and to arrive at Loretto at 7:42 the same evening, so that decedent was on the train about two hours and one-half.  As the train was approaching Loretto, and after the flagman had announced in the car in which Mudd was riding, "Loretto," or "Loretto is, the next stop," some of the witnesses giving it one way and some another, decedent got up from his seat, walked out of the car upon the platform, and either fell from the car or jumped off, while the train was going thirty or thirty-five miles an hour.  The evidence does not show that the conductor, flagman or any train official saw decedent leave his seat, go to the platform, or fall or get off of the train, or that they knew of his action, until informed by one of the passengers that he had either fallen or jumped off the train.

Appellee's petition states, that, at the time of the accident and all the time decedent was upon appellant's passenger train, he was, from the use of intoxicating liquors, in a helpless condition, and incapable of taking care of himself, or of discerning, apprehending and preventing danger and injury to himself, and that his condition was known, or could, by the exercise of ordinary care, have been known by appellant's employees and agents in charge of the train, and that they negligently permitted him, while in that condition, to leave the car on the train and fall therefrom, thereby producing the injuries which resulted in his death.

Insisting that the evidence failed to show that decedent was intoxicated to such a degree as to impose upon its servants the obligation of exercising extra care and precaution for his safety, appellant, at the close of appellee's testimony, and again at the completion of all the evidence, entered a motion for a directed verdict in its favor, and the refusal of the court to sustain this motion is relied upon here as the chief ground for re-

versal. Both sides rely upon the case of L. H. & St. L. Ry. Co. v. Gregory's Admr., 141 Ky. 747. In that case, this court considered the duty of a carrier to an intoxicated passenger, and, after an exhaustive review of the authorities therein cited, concluded as follows:

"It is the duty of the train employees to look after the safety and comfort of all the passengers, and they are not required to extend to one more protection or care than another, except under special circumstances. And the mere fact that a passenger is drinking or under the influence of liquor is not enough to put upon trainmen the extra duty of giving to him more care than to the other passengers. This measure of duty is only demanded when the condition of the passenger is such that he is helpless or incapable of taking care of himself. If a passenger on account of intoxication that does not produce helplessness or incapacity is rendered less capable of protecting himself from accident or injury than he otherwise would be or his condition induces him to become more indifferent to his safety, he must take the consequences of his own recklessness, and the company will not be charged with the duty of taking especial care of him. His right to recover is no greater than would be that of a sober person of ordinary prudence. A man may be under the influence of liquor and yet be as competent to protect himself from danger as a thoroughly sober man would be. And it often happens that sober men expose themselves to dangers that a partially intoxicated man would avoid. And so there is good sense and reason in the rule that the sober man and the partially intoxicated man are entitled to the same measure of care, one not more than the other. But when a passenger is so much under the influence of liquor as to be helpless or irresponsible or incapable of protecting himself from accident, and his condition is or could be known by the trainmen in the exercise of reasonable care, the plainest dictates of humanity demand that he should not be permitted to remain or place himself in unnecessary peril if the persons in charge of the train, by the exercise of ordinary care, can prevent it. But the trainmen are not obliged to anticipate that a passenger who is under the influence of liquor will unnecessarily expose himself to danger, nor are they under any duty to exercise more than ordinary care to discover whether the passengers are drunk or

sober. It is only when their attention is directed either by personal observation or information to the helpless, irresponsible or incapable condition of a passenger or when by the exercise of ordinary care his condition could be discovered that they are under a duty to exercise reasonable care to protect him.''

This is an accurate statement of the whole law to which the facts of this case must be applied.

To sustain her charge, appellee introduced twelve witnesses, the first six of whom, and Dr. Ed Mudd, gave evidence simply to prove that the death of appellee's intestate, which did not occur for more than six months after the accident, resulted therefrom. Mrs. Lou Coy was introduced to prove decedent's condition as to sobriety some three or four hours before he boarded the train at Louisville, but her evidence was properly excluded by the court, as it was too remote in time to be of any probative value. Of the other four witnesses testifying for appellee, two of them, Lloyd E. Mudd, one of decedent's sons, and Everett Masterson, testified as to the condition of decedent for the two hours just before he boarded the train at Louisville, while Len Thompson and Don McLain testified as to his condition of sobriety when he was discovered after falling from the train and while his wounds were being dressed. It will thus be seen that no witness for appellee testified as to the condition of decedent during the two hours and a half he was on the appellant's train, and during which time, only, appellant owed any duty to the decedent. No witness testifying for plaintiff states that, during the time decedent was on the train, he was in a helpless or drunken condition, or that he was not entirely capable of taking care of himself, or that he said or did anything, while on the train, to suggest or indicate to appellant's servants in charge of the train that he was in such a state of intoxication as to require any assistance or special attention, or in fact, that he was even drunk. As appellant's duty to decedent existed only during the time he was a passenger on the train, and was dependent upon his condition only during that time, appellant objected and excepted to the introduction of all of the evidence of decedent's condition, both before he got on the train, and after he left it, and it is insisted here, that the introduction of such evidence was error, and that that evidence was incompetent; but, as

it was necessary, in order to make out a case, for appellee to prove that her decedent was in a helpless condition from intoxication, evidence of the extent of his intoxication, within a reasonable time before and after the time he was on the train as a passenger, was, we think, competent, although not of the same probative value, of course, as evidence of his condition during the time he was on the train. That decedent had been drinking within a short time before he got on the train, and was in such condition from the intoxicants taken that, though able to walk to the train, he required assistance, tended to show that, during the time he was on the train, he was under the influence of intoxicants, to some extent, at least, and, while not sufficient to establish the fact that decedent, at the time of the accident, was in a helpless state of intoxication, the fact that appellee had to establish in order to make her case, it was, nevertheless, competent, although of no great probative value, and the court did not err in admitting this evidence. For the same reason, the evidence of Len Thompson and Don McLain, as to the extent of decedent's intoxication, within a short time after the accident, was also competent, even though it alone, or in connection with the other evidence, was not sufficient to make out appellee's case.

Having decided that this evidence was competent, we come now to the question, whether or not the evidence of these four witnesses was sufficient to carry the case to the jury. It will be noticed, from the rule as quoted above from the Gregory case, that, in order to make out her case, it was necessary for appellee to prove, not only that decedent was in a helpless, irresponsible or incapable condition, but, also, that the servants of appellant either knew of that condition, or by the exercise of ordinary care could have discovered it. Lloyd E. Mudd, decedent's son, testified that, at four o'clock on the afternoon of the accident, when he arrived in Louisville from Lakeland, his father was drunk; that witness and decedent walked from the interurban station, at Second and Jefferson Streets, over to Fourth Street, out Fourth Street to Broadway, and out Broadway to the Union Depot, where they arrived at 4:45 p. m.; that on the way to the depot they stopped in about a half dozen saloons, in each of which decedent drank beer; that decedent had a half pint bottle of whiskey,

out of which he and Masterson each took a drink, in the lavatory, before he got on the train; that he and Masterson walked, one upon either side, with decedent to the train, and helped him to mount the steps and to a seat in the train, where they left him, about ten or fifteen minutes before the time for the train to leave the station; that, as he left the train, he said to the flagman: "The old gentleman is drinking considerably, I wish you would see that he gets off at Loretto Station." Masterson testified that he first saw decedent and his son about five o'clock upon the afternoon of the accident, when they came into the depot; that decedent was then drunk; that his son, Lloyd E. Mudd, assisted him to the train by holding his arms, part of the time; that decedent wasn't able to go by himself, very well; that they both helped decedent up the steps and into the train; that, as they came out of the train, he heard the son say something to the flagman, but didn't understand what it was. Len Thompson testified that, when, upon the arrival of the train at Loretto Station, he learned that decedent had fallen from the train, he, with James Smith, went along the track until they found the decedent lying near the track with his coat over his head, apparently dead, but, when witness pulled his coat from over his head, he said, "Let me alone, you G—d d—n sons of bitches, let me alone, let me die right here;" that several others then came up and put decedent in the baggage car and took him up to the store, where Dr. Cissell dressed his wounds; and that he kept "cussing" while his wounds were being dressed; that decedent was either drunk or unconscious, he didn't know which; that decedent remained at Dr. Cissell's about an hour and a half, when he got in a buckboard with his son to go to his home, five miles in the country; that after his wounds had been dressed and when he started home he pulled his derby hat "down clear over his head, clear over the sores and all"; that he was either drunk or unconscious; he didn't know what he was doing. Don McLain testified that on the night of the accident, he was at Loretto Station when the train came in; that after the train came in he went to where decedent was lying, about a quarter of a mile from the station; that decedent was lying on his right side, drawn up and his coat was over his head; that some one shook decedent, who then kicked at them and said, "Let me

alone, you damn sons of bitches, let me alone, don't bother me." "I could see Doctor was very drunk and had the smell of whiskey all over him, and he was very drunk;" that decedent's eye seemed almost entirely closed; "that eye was almost entirely clogged up with blood." This is the substance of the evidence, which has even a tendency to show that decedent was in a helpless condition, and, in our judgment, falls far short of establishing the fact that decedent was, while on the train, in such a state of intoxication as to render him helpless or incapable of taking care of himself; but, even if it might be considered that this testimony furnished some evidence that decedent was so drunk as to be helpless or incapable of taking care of himself, which we do not concede, it certainly cannot be contended that it furnished any evidence that his condition was such that the train officials, in the exercise of ordinary care, could have discovered that he was helpless or incapable of taking care of himself. This evidence, in our minds, does no more than prove that decedent was somewhat under the influence of intoxicants, while a passenger on the train, but does not even tend to prove that his condition was such that the trainmen should have anticipated that when his station was announced he would immediately get up and get off the train, while it was running at a rapid rate, and we are of the opinion that the court erred in overruling appellant's motion for a peremptory instruction at the conclusion of plaintiff's evidence, and again after all the evidence on both sides was in; the evidence for the defendant having shown that decedent, while on the train, was not in a helpless condition; that he did not do or say anything that would indicate that he was not entirely capable of caring for himself; that his behavior and conversation on the train were unobjectionable; that he walked about the train without assistance, at one time going into another coach and returning, while the train was in motion, without assistance.

As another trial will be necessary, we do not now pass upon the question as to whether or not the verdict was excessive.

For the reasons indicated, the judgment is reversed and cause remanded for further proceedings consistent herewith.